IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. HARES, | : | Civil No. 1:22-CV-00054 |
| Plaintiff, | : | |
| v. | : | |
| GEORGE LITTLE, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### **MEMORANDUM**

Before the court are cross motions for summary judgment. (Docs. 38, 64.) For the following reasons, the court will grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, enter judgment in favor of Defendants, and close the case.

### **PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a complaint under 42 U.S.C. § 1983 in January of 2022. (Doc. 1.) The complaint raised multiple Eighth Amendment claims and a negligence claim against the following four individuals: (1) George Little, Secretary of the Department of Corrections ("DOC"); (2) M. Houser, Superintendent of the State Correctional Institution Benner Township ("SCI-Benner Township"); (3) Scott Klinefelter, Deputy Superintendent Facility

1

Management at SCI-Benner Township; and (4) C. Witherite, Correctional Officer 1 at SCI-Benner Township. (*Id.*, pp. 2–3.)[1]

The complaint alleges that on June 7, 2021, Plaintiff was involved in a physical altercation with another inmate. (*Id.*, p. 4.) This altercation was witnessed by Defendant Witherite. (*Id.*) Plaintiff alleges that Defendant Witherite called the other inmate to the desk and asked the inmate to turn around and cuff up. (*Id.*) The inmate refused, and Defendant Witherite failed to apprehend the inmate, letting the inmate "come after" Plaintiff. (*Id.*) Plaintiff states he "had no choice but to defend myself at this time." (*Id.*) Plaintiff alleges that he was sprayed with pepper spray in his face and told by the block Sergeant Flaherty to turn around and cuff up. (*Id.*) Plaintiff alleges he complied with the instructions. (*Id.*) Plaintiff alleges that Defendant Witherite "failed to apprehend the other inmate," and "let him still come after me (when I was supposed to be safe and secure) and assault me to where I was knocked out and unconscious because he was able to hit me." (*Id.*)

Plaintiff alleges that as a result of the assault, he had trouble chewing due to swelling on the right side of his face and jaw, and he began experiencing migraines. (*Id.*, p. 6.) He also alleges that he had trouble breathing due to the OC spray, was knocked unconscious, suffered a concussion, and suffered a jaw injury.

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

2

(*Id.*, p. 7.)  Based on these facts, Plaintiff raises claims under the Eighth Amendment for deliberate indifference and excessive force and a claim of negligence.  (*Id.*)

Defendants answered the complaint on August 25, 2022.  (Doc. 26.)  Plaintiff then filed an early motion for summary judgment on November 25, 2022.  (Doc. 38.)  Defendants timely filed a response to Plaintiff's motion.  (Docs. 66, 71, 72.)  Defendants also filed a motion for summary judgment on September 29, 2023.  (Doc. 64.)  Despite being granted additional time to do so, Plaintiff did not file a brief in opposition.  (Doc. 74.)  Therefore, the cross motions for summary judgment are fully briefed and will now be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Benner Township, located in Centre County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Undisputed Facts

Defendants submitted a statement of facts, Doc. 65, and a DIVAR footage from the CCTV cameras on the EA Block Dayroom and a handheld camera, Doc.

67. The court has reviewed the footage. What follows is a summary of Defendants' statement of facts.

On June 7, 2021, at around 3:00 p.m., Plaintiff got into an altercation with Inmate Bellinger in the Dayroom of the EA Block at SCI-Benner Township. (Doc. 65, ¶ 1.) Just prior to the altercation, Plaintiff and Bellinger are seen walking and talking together. (*Id.*, ¶ 2.) The two inmates stop walking when they reach the bottom of the stairway. (*Id.*) They talk for about a minute ate the bottom of the stairway. (*Id.*, ¶ 4.) Plaintiff punches Bellinger and the two proceed to exchange blows. (*Id.*, ¶¶ 5–6.) Bellinger backs away from Plaintiff, and the initial fight appears to end. (*Id.*, ¶ 7.) Bellinger walks over to a table and puts down his head. (*Id.*, ¶ 8.) Bellinger then walks towards Plaintiff and lunges at him. (*Id.*, ¶ 9.) The two appear to "square up," but do not further engage in any physical contact. (*Id.*, ¶ 10.) The two put down their fists and appear to be talking to each other again. (*Id.*, ¶ 11.)

During this interaction, Defendant Witherite was sitting at the officer's desk. (*Id.*, ¶ 3.) At the point in the altercation when the two inmates have put their fists down and are talking again, he comes around from the desk and is watching the two inmates. (*Id.*, ¶ 12.) Plaintiff begins walking to the right side of the Dayroom. (*Id.*, ¶ 13.) Bellinger retrieves his tablet from the table and walks towards the center of the Dayroom. (*Id.*, ¶ 14.) Defendant Witherite returns to the officer's

desk. (*Id.*, ¶ 15.) Plaintiff walks to the far right corner of the Dayroom and remains there while Bellinger walks to a table in the center of the Dayroom and remains there. (*Id.*, ¶¶ 16–17.)

Defendant Witherite then leaves the desk "to get more officers." (*Id.*, ¶ 18.)[2] Defendant Witherite returns to the desk with Corrections Officer Flaherty ("Flaherty"). (*Id.*, ¶ 19.) Flaherty reviews the computer screen at the officer's desk. (*Id.*, ¶ 20.) She then leaves the desk and approaches Bellinger and Plaintiff. (*Id.*, ¶ 23.) During this time, Defendant Witherite is standing to the right of the officer's desk. (*Id.*, ¶ 22.) As Flaherty approaches the two inmates, Bellinger immediately turns away from Flaherty and towards Plaintiff "at a quick pace." (*Id.*, ¶ 23–24.) Flaherty increases her pace following Bellinger. (*Id.*, ¶ 25.) Defendant Witherite pursues Flaherty on the left. (*Id.*, ¶ 26.) Corrections Officer Wileman ("Wileman") begins to pursue as well. (*Id.*, ¶ 27.) As Bellinger approaches Plaintiff, he places his tablet on a table, and the two men "square up." (*Id.*, ¶¶ 28, 30.) This time, Bellinger appears to throw the first punch starting a second round of fighting. (*Id.*, ¶ 31.)

Defendant Witherite and Wileman deploy "a quick burst of OC spray" on the inmates. (*Id.*, ¶ 33.) The inmates back away from each other and reach for

---

[2] Defendants cite the video as evidence, but the court notes that the video cannot prove Defendant Witherite's intent in leaving the Dayroom.

7

their eyes. (*Id.*, ¶ 34.) Plaintiff moves to the right side wall and submits to being handcuffed by Flaherty. (*Id.*, ¶ 35.) Bellinger moves to the center of the Dayroom and Defendant Witherite and Wileman pursue him. (*Id.*, ¶¶ 36–37.) Defendant Witherite moves around an inmate who is not involved in the altercation. (*Id.*, ¶ 38.) Bellinger stops and places his hands behind his back. (*Id.*, ¶ 39.) He then turns back towards Plaintiff and wipes his eyes with his shirt. (*Id.*, ¶ 40.) Other inmates are crowding the area, and Defendant Witherite has moved around inmates at the table and begins to reengage with Bellinger. (*Id.*, ¶¶ 41–42.) Bellinger walks towards Plaintiff with Defendant Witherite and Wileman pursuing him. (*Id.*, ¶¶ 43–44.) Bellinger runs toward Plaintiff and punches Plaintiff in the face. (*Id.*, ¶¶ 46–47.) Plaintiff falls to the floor. (*Id.*, ¶ 47.) Wileman deploys a second burst of OC spray at Bellinger. (*Id.*, ¶ 48.) Bellinger then continues fleeing from Defendant Witherite and Wileman, until eventually submitting. (*Id.*, ¶ 49.)

With the aid of Flaherty, Plaintiff sits up. (*Id.*, ¶ 51.) At approximately 3:06 p.m., more officers arrive on the scene. (*Id.*, ¶ 52.) Plaintiff is escorted into the hallway, patted down, escorted to medical, and medically evaluated. (*Id.*, ¶¶ 53–55.) During this evaluation, a nurse asks if Plaintiff is having any issue with breathing, and Plaintiff responds with "yeah, a little bit." (*Id.*, ¶¶ 56–57.) The nurse flushes the OC spray from Plaintiff's eyes, Plaintiff complains that his left eye isn't fully flushed, and the nursing staff flushes his eyes again. (*Id.*, ¶¶ 58–59.)

The nurse asks if Plaintiff has a headache, and he responds "a little bit."  (*Id.*, ¶¶ 59–60.)  Plaintiff's left eye is flushed a third time, and his face and eyes are wiped down.  (*Id.*, ¶¶ 61–62.)  Plaintiff is then escorted to security, the body scanner, and then placed in the RHU.  (*Id.*, ¶ 64.)

The DC-457 Injury Report states that Plaintiff suffered an edema on his right cheek bone area and denies other injuries.  (*Id.*, ¶¶ 65, 67.)  The DC-457 indicates that he was not medically cleared for the use of the use of OC Spray, but the incident was an unplanned use of force.  (*Id.*, ¶ 71.)  The DC-586C report states that Plaintiff suffered a superficial abrasion above his left eyebrow that was cleaned by a nurse with soap and water.  (*Id.*, ¶¶ 68–69.)

Plaintiff's DC-440C Preventative Health Risk Assessment Tool dated December 7, 2020 shows that based on Plaintiff's asthma, he had a medical contradiction for the use of OC spray.  (*Id.*, ¶ 72.)

On July 20, 2021, Plaintiff's medications of Buspar and Prozac were increased, and both medications list headache and nausea as side effects.  (*Id.*, ¶¶ 74–75.)  On July 26, 2021, Plaintiff complained of headaches and migraines.  (*Id.*, ¶ 73.)  On September 8, 2022, Plaintiff was assessed for posttraumatic headache because his headaches had not resolved.  (*Id.*, ¶ 76.)  Plaintiff was referred for a CT scan.  (*Id.*)  A March 2, 2023 CT scan found no abnormalities and no acute findings.  (*Id.*, ¶ 77.)

Plaintiff did not submit a separate statement of facts as required under Local Rule 56.1.  He included a facts section in his briefing, but only set forth the facts concerning the procedural history in this case.  (Doc. 41.)  He did not address the facts giving rise to the action.  (*Id.*)  Neither did Plaintiff dispute the statement of facts filed by Defendants.  (Doc. 72.)  Local Rule 56.1 states, in pertinent part, that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement requirement to be served by the opposing party."  Since Plaintiff did not file his own statement of facts concerning the incident on June 7, 2021, and failed to oppose the statement of facts submitted by Defendants, the statement of facts filed by Defendants are deemed admitted and undisputed.

**B. Defendants' Motion For Summary Judgment Will Be Granted.**

Defendants move for judgment in their favor for three reasons.  (Doc. 73.)  First, Defendants argue that Defendants Little, Houser, and Klinefelter must be dismissed because Plaintiff cannot establish their personal involvement in the matter.  (*Id.*)  Second, Defendants argue that the evidence demonstrates that Defendant Witherite acted reasonably to apprehend inmate Bellinger and did not use excessive force when he used OC spray on Plaintiff.  (*Id.*)  Third, Defendants argue that they have sovereign immunity from any tort claim.  (*Id.*)  The court will address each argument in turn.

### 1. Defendants Little, Houser, and Klinefelter

Plaintiff's complaint failed to allege any personal involvement on the part of Defendants Little, Houser, and Klinefelter. (Doc. 1.) To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

While the complaint fails to allege any personal involvement on the part of Defendants Little, Houser, and Klinefelter, any inferred liability against these three Defendants based on their supervisory status will likewise fail. Supervisory liability under § 1983 utilizes the same standard as municipal liability. *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999). A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights. *See id. at* 357. To establish supervisory liability, a plaintiff must show that (1) a superior

11

officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)). Here, Plaintiff's complaint fails to raise any policy or custom to establish liability. (Doc. 1.)

Furthermore, Plaintiff's own motion for summary judgment concedes that Defendant Little "may not be held accountable because he may have not known of this matter because he was not in Office at the time of the incident occurred." (Doc. 38.)

Because the complaint fails to allege any personal involvement or liability under respondent superior against Defendants Little, Houser, and Klinefelter, the court will enter judgment in their favor.

### 2. Defendant Witherite

Plaintiff alleges both a failure to protect claim and an excessive force claim against Defendant Witherite. (Doc. 1.) The court will address each claim separately.

### i. Failure to Protect

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citations omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.

The Supreme Court has found that an Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Id*. Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 (3d Cir. 2001). This deliberate indifference standard "is a subjective standard under *Farmer*-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id*. Thus, "[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety." *Hamilton v. Leavy,* 117 F.3d 742, 747 (3d Cir. 1997) (emphasis added).

Here, Plaintiff is alleging that Defendant Witherite failed to protect him from Bellinger at two different moments during the June 7, 2021 altercation. (Doc. 1, p. 4.) The first moment is when Defendant Witherite's failed to restrain inmate Bellinger after the first fight. Plaintiff alleges that "the officer failed to apprehend the inmate and let the inmate come after me. I then had no choice but to defend myself at this time." (*Id*.) The second is when Defendant Witherite failed to restrain inmate Bellinger after Plaintiff was handcuffed, and Bellinger punched him a final time. (*Id*.) Essentially, Plaintiff alleges that it is Defendant Witherite's failure to apprehend Bellinger between the first and second fights that led to the final punch that caused his injury. (*Id*.)

As an initial matter, the court concludes as a matter of law, that there is no duty of an unarmed officer to physically intervene in a prison fight which poses a serious risk of harm to the officer. *See McDowell v. Deparlos*, No. 1:15-cv-00487, 2016 WL 423778 * 6 (M.D. Pa. Jan. 7, 2016) *report and recomm. adopted*, No. 1:15-CV-0487, 2016 WL 407393 (M.D. Pa. Feb. 3, 2016) (citing *Arnold v. Jones*, 897 F.2d 1370, 1373 (8th Cir. 1989); *Parker v. Mulderig*, No. CIV. A. 92-2645, 1993 WL 44275, *5 (E.D. Pa. Feb. 17, 1993) (also adopting the Eighth Circuit caselaw).

Therefore, the sole question is the promptness with which Defendant Witherite proceeded to restrain Bellinger. Defendant Witherite presents evidence

in the form of a time-stamped video that shows Plaintiff and Bellinger engage in an initial fight at 3:03:25 p.m. It then shows the two inmates separate on their own accord at 3:03:27 p.m. Defendant Witherite then leaves the Dayroom at 3:04:07 p.m. and returns with additional staff at 3:04:24 p.m. The two inmates then engage in a second physical confrontation at 3:04:56 p.m. At 3:05:03 p.m., Defendant Witherite and Wileman spray the two inmates with OC spray causing them the separate. At 3:05:12 p.m., Plaintiff is cuffed by Flaherty. At 3:05:16 p.m., Bellinger strikes Plaintiff in the face. Bellinger is then pursued and eventually cuffed at 3:05:42 p.m. (Doc. 67.)

The video evidence establishes that one minute and twenty-nine seconds passed between the end of the first fight and the beginning of the second. During this time, additional staff members came to the Dayroom and neither inmate was restrained. It is this period of time that Plaintiff alleges is the basis for his Eighth Amendment claim. The video shows that the two inmates separated on their own accord and walked in different directions. Therefore, without some evidence by Plaintiff to establish a continued threat of harm, Defendant Witherite's action of getting help from additional officers does not amount to disregarding an excessive risk to Plaintiff's safety.

While Plaintiff did not respond to Defendants' motion for summary judgment, he alleges in his own motion for summary judgment that by leaving the

15

Dayroom to get help, Defendant Witherite violated the Department of Corrections ("DOC") policy. (Doc. 41.) A violation of DOC policy is not actionable under 42 U.S.C. § 1983. *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (concluding that the inmate-plaintiff could not maintain a due process claim based upon "possible technical non-compliance with [a Bureau of Prisons] regulation"). The Eighth Amendment standard does not rely upon DOC policy to determine if a violation has occurred. *See Farmer*, 511 U.S. 838 (setting forth the Eighth Amendment liability standard). Furthermore, Plaintiff fails to produce anything more than an accusation that Defendant Witherite violated DOC policy. (Doc. 41.) Therefore, Plaintiff has failed to show that there is a genuine issue of material fact about whether Defendant Witherite acted with deliberate indifference.

    Now, the court turns to the alleged Eighth Amendment violation following the second fight. Only 20 seconds elapse from the start of the second fight to the punch that Plaintiff alleges is the basis for the Eighth Amendment violation. The court acknowledges that Defendant Witherite does not appear to increase his gait when Bellinger lunges towards a cuffed Plaintiff to strike the final punch. However, at no point from the beginning of the second fight to the final punch did Defendant Witherite appear to stall in order to allow Bellinger to continue attacking Plaintiff. On a review of video evidence on this critical fact issue, Plaintiff has failed to show that there is a genuine issue of material fact about

whether Defendant Witherite acted with deliberate indifference. The evidence establishes that he did not. Defendants' motion for summary judgment will be granted on this claim as well.

### ii. Excessive Force

Next, Plaintiff alleges that Defendant Witherite's use of OC spray constituted the use of excessive force in violation of the Eighth Amendment. (Doc. 1, 6.) He alleges that it is known that he has asthma, and the use of OC spray with this knowledge constitutes excessive force. (*Id*.)

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, (1992) (citing *Whitley*, 475 U.S. 312). In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

The Third Circuit has found that "[t]he use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). In *Gibson* the inmate-plaintiff was threatening self-harm, and the Circuit Court found that "the unplanned use of force was required to prevent Gibson from hurting himself." *Id*. Here, the threat of safety to staff and inmates was higher than that in *Gibson*. Plaintiff and Bellinger were engaging in violent behavior that could escalate to other inmates and staff. Furthermore, while Plaintiff has been diagnosed with asthma, the extent of the injury inflicted by the OC spray was temporary and minimal. Defendants submitted evidence in the form of a video showing Plaintiff being immediately treated by medical staff by washing his face multiple times and inquiring about his breathing. (Doc. 65, 67.) Plaintiff presented no evidence to counter this video. Therefore, Defendants' motion for summary judgment will be granted on this claim as well.

### 3. Negligence

Plaintiff's complaint also raises a claim of negligence. (Doc. 1, p. 6.) Defendants do not attack the claim of negligence directly, but instead allege sovereign immunity shields them from any liability. (Doc. 73, pp. 14–15.)

Assuming, *arguendo*, that Plaintiff has sufficiently pled an underlying negligence claim, such a claim fails because the DOC is a Commonwealth agency. Accordingly, the DOC and its employees are entitled to sovereign immunity from state-law claims, including allegations of liability arising from negligent acts. *See McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999) (state agencies and their employees are entitled to protections afforded by sovereign immunity) (citing *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995); *Robles v. Pa. Dep't of Corr.*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998)), aff'd 35 F. App'x 357 (3d Cir. 2002) (nonprecedential). The Commonwealth of Pennsylvania has explicitly retained its sovereign immunity and not waived it, except in ten carefully defined and limited circumstances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highway and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S. § 8522(b). None of these exceptions apply to this case. Therefore, Defendants have sovereign immunity from Plaintiff's negligence claim and judgment will be entered in their favor.

**C. Plaintiff's Motion For Summary Judgment Will Be Denied.**

As addressed at length above, Defendants' motion for summary judgment will be granted on all claims and judgment will be entered in their favor. Therefore, Plaintiff's motion will be denied.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment will be granted, Plaintiff's motion for summary judgment will be denied, and judgment will be entered in Defendants' favor. This will close the case.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 13, 2024